UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BILL MADSON, individually and as next friend of F.M., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERTS & STEVENS, P.A., and<br><br>PHIL JACKSON, Esq. and<br><br>JORDAN BARNETTE, Esq.<br><br>Defendants | Case # 1:25-CV-425-MOC-WCM<br><br>FILED<br>ASHEVILLE, NC<br><br>NOV 26 2025<br><br>U.S. DISTRICT COURT<br>W. DISTRICT OF N.C.<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Bill Madson and F.M. bring this action against Defendants, on a pro se basis, alleging as follows:

## INTRODUCTION

1. In August 2025, my teen child who is diagnosed with autism was admitted to Mission Hospital and Sweeten Creek Mental Health Center in Asheville, NC for acute mental health concerns. I deemed her care to be unsatisfactory for a number of reasons, including potential federal civil rights violations. The day before my child's discharge, I had a conversation with someone who purported to be from the nursing department but was actually the Chief Operating Officer of Mission upon a Google search. Then, my daughter's discharge appointment occurred in the Sweeten Creek lobby, lasted only 3-4 minutes, with multiple strangers present for all aspects of the appointment, did not include a patient safety plan and no physician was present.

2. I began a research process to understand my child's rights and my rights. Between then and now, I have spent more than 200 hours researching these rights.

3. On October 18, with the express goal of protecting our rights and preserving evidence, I sent a litigation hold notice and evidence preservation letter to a medical professional at Sweeten Creek (Dr. Deponti). The Defendants are legal professionals and have stated they represent HCA Healthcare, Inc., among other people and entities associated with HCA Healthcare, Inc., Mission Hospital, and Sweeten Creek. Defendants confirmed they represent this medical professional.

4. Over a multi-week period starting on October 20, 2025 after directly replying to this litigation hold notice, the Defendants coordinated a series of coercive, misleading, and retaliatory cease-and-desist directions that unlawfully silenced me and my minor child, which intentionally chilled our federally protected civil-rights activities.

5. At all times during the Defendants' unlawful cease and desist campaign, the medical facility was identified as being in Immediate Jeopardy (to not receive future federal funding) from the Centers For Medicare and Medicaid Services (CMS). CMS' Immediate Jeopardy identification letter references mentions 4 categories of issues with the hospital – Governing Body, Patients Rights, Nursing Services and Emergency Services.

6. The litigation hold notice highlighted specific problems which definitely overlap with the issues described by CMS. Moreover, my litigation hold notice specifically asked any HCA-employed readers to report my problem.

7. Given the backdrop of Immediate Jeopardy and the fact that I was encouraging HCA employees to report this issue to federal agencies, Defendants had reason to want to delay my filing until after the hospital had navigated the Immediate Jeopardy identification.

8. The Defendants are healthcare specialist attorneys in Asheville, the medical facility is in Asheville, the medical facility is owned by HCA and the Defendants have represented to me that they represent HCA – those four facts make it impossible for the Defendants to not have known about the Immediate Jeopardy identification from CMS.

9. All of the Defendants' communication occurred via e-mail and 100% of the Defendants' emails and attached files are included in this complaint filing (including the exhibit file). Every word they directed to me is included in this filing.

10. I have been very concerned the preservation of the video surveillance footage which will show the discharge appointment taking place in the lobby. More details are contained herein but there was a major communication delay concerning the evidence preservation letter. I am concerned the footage may have been automatically deleted.

11. My child and I are in the middle of a patient rights crisis, a civil rights crisis, and an evidentiary crisis, all as a result of the Defendants' conduct. We are seeking a Temporary Restraining Order from the Court in a separate filing.

12. I am bringing these 11 claims before this Court: First Amendment Retaliation, Interference With The Right To Petition The Government, Prior Restraint On Protected Speech, ADA Retaliation, Section 504 Retaliation, Civil Conspiracy To Violate Federal Rights, Abuse of Process, Intentional Infliction Of Emotional Distress, Negligent Infliction of Emotional Distress, Civil Conspiracy, and Negligent Supervision.

## PARTIES

13. Defendant Roberts & Stevens, P.A. is a North Carolina corporation with a principal office located at 301 College Street, Suite 400, Asheville, NC 28801. It may be served at that address. Information on this Defendant's website indicates they have been in business for 40 years, and they attribute their success to "decades of conscientious legal work."

14. Defendant Phil Jackson, Esq. is a North Carolina resident who may be served at his office located at 301 College Street, Suite 400, Asheville, NC 28801. Attorney Jackson was admitted to practice law in the state of North Carolina on August 26, 1994 and is licensed to practice today (Bar #21134).

15. Defendant Jordan Barnette, Esq. is a North Carolina resident who may be served at his office located at 301 College Street, Suite 400, Asheville, NC 28801. Attorney Barnette was admitted to practice law in the state of North Carolina on August 27, 2018 and is licensed to practice today (Bar #53380).

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

16. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the First Amendment, 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

17. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over my related state-law claims because those claims form part of the same controversy as the federal claims.

18. Personal jurisdiction is proper because all Defendants reside in North Carolina, maintain their principal offices in North Carolina, and committed the acts complained of within the Western District of North Carolina.

19. All conditions precedent to filing this action have been satisfied, excused, or have otherwise occurred.

## FACTUAL ALLEGATIONS

20. On October 18, 2025 I delivered a litigation hold notice via FedEx and email to Dr. Warren Deponti, a physician at Sweeten Creek who provided medical services to my child. I copied a law firm named Roberts & Stevens because I had reason to believe they may represent the local hospital system. The body of the email was a request for the doctor to review an attachment. The attachment was a 54-page litigation hold notice. The litigation hold notice itself is relevant to this matter in many ways:

- I clearly stated I was not an attorney.
- I clearly stated I was advocating for the rights of my autistic child who has certain federal protections.
- I clearly stated that there was no current litigation ongoing between me and any other parties relating to the treatment of my child.
- I clearly stated I believed there were potentially several federal causes of action, including civil rights matters, that were applicable to my child's treatment.
- I clearly stated that I wanted HCA employees to report the matter to federal agencies and they had a legal obligation to do so.

- The four corners of the litigation hold document exclusively contain information that was not only lawful but also privileged and protected.

21. During my research, I spent a lot of time focused on understanding the various incident reporting mechanisms that are in place in a hospital setting. I read the HCA Healthcare Code of Conduct in great detail, because my situation with my child touched on a number of important issues contained in the HCA Healthcare Code of Conduct.

22. In the litigation hold notice, I directed any HCA-employed readers to the fact that incident reporting is non-optional based on my observations about incident reporting thus far. This is exactly what I wrote:

---

**HCA Healthcare Code of Conduct, Required Reportability and The Concept of Regenerative Liability**

In the HCA Healthcare Code of Conduct (which you have reviewed and signed), CEO Sam Hazen tells all employees:

> If you have questions regarding our Code of Conduct or encounter any situation that you believe violates provisions of it, you should immediately consult your supervisor, another member of management at your facility, your Facility Human Resources Business Partner, your Facility Ethics and Compliance Officer, the HCA Healthcare Ethics Line (1-800-455-1996 or http://hcahealthcareethicsline.ethix360.com), or the Corporate Ethics and Compliance Officer. You have my personal assurance there will be no retribution for asking questions or raising concerns about the Code or for reporting possible improper conduct. No code of conduct can substitute for each person's own internal sense of fairness, honesty, or integrity. If you encounter a situation or are considering a course of action that does not feel right, please discuss the situation with any of the resources mentioned above.

The report contains the following:

---

> **Personal Obligation to Report**
>
> We are committed to ethical and legal conduct that is compliant with all relevant laws and regulations and to correcting wrongdoing wherever it may occur in the organization. Each colleague has an individual responsibility for reporting any activity by any colleague, physician, subcontractor, or vendor that appears to violate applicable laws, rules, regulations, accreditation standards, standards of medical practice, federal healthcare conditions of participation, or this Code. If a matter that poses serious compliance risk to the organization or that involves a serious issue of medical necessity, clinical outcomes or patient safety is reported locally, and if the reporting individual doubts that the issue has been given sufficient or appropriate attention, the individual should report the matter to higher levels of management or the Ethics Line until satisfied that the full importance of the matter has been recognized. If a matter that poses concern regarding the safety or quality of care provided to a patient in the hospital is identified and was reported locally but thought to be unresolved, an additional avenue for reporting is available through notification to The Joint Commission. There will be no retaliatory disciplinary action taken against an employee who reports concerns to The Joint Commission.

- The events outlined in this notice certainly qualify for required reporting. That is not up for debate.
- If you are an employee or HCA or HCI and you are reading these words, you now have a duty to report this incident. You must follow the guidelines exactly as written.
- A full copy of the Healthcare Code of Conduct is attached as Exhibit F for further review.
- After the Lobby Discharge, I stayed up for 2 days with no food or sleep having become very focused on all of this. One of the things on my mind was this concept, which I have named "regenerative liability" over the last month or so.
- The Personal Obligation to Report applies to all employees, so everyone with knowledge has to take it 'at least one step up' in terms of reporting it to a more senior employee or manager, etc.
- The key issue is that senior employee who receives the issue from a subordinate, that person has to make sure the issue is either satisfactorily resolved, sent up to a more senior employee, or sent to The Joint Commission.

- Any failures to report this matter represent a new, automatous compliance breach by each person. Multiple failures to report would become evidence of a systemic coverup.

23. Two days later on October 20, Attorney Phil Jackson with Roberts Stevens responded

with the following:

"Dear Mr. Madson – Please allow this email to confirm that I have been retained to represent MH Mission Hospital, LLLP (hereinafter "Mission"), its affiliated corporate entities, its officers, its agents, and its employed physicians related to this matter. Please do **not** have any further communication of any type with any person at Mission related to this matter. Please direct all communications to this email address or the address listed below. To the extent that you have already sent via email, US Mail, or overnight courier any communication to any person at Mission related to this matter, I ask that you provide a copy of that communication to me directly."

24. The word "not" was stylized using bolding and underlining in the author's original email. This form of stylizing would be repeated by Defendants in the future.

25. This email was received on October 20, 2025 at 5:18pm. It's at this exact moment that my child and I begin to have access to less-than-100% of our protected civil and patient rights as a result of the conduct of the Defendants.

26. Attorney Jackson attempted to stifle the rights of me and my child at this very moment, knowing that I had federal civil rights issues with his client because of my child's care, knowing about Immediate Jeopardy, knowing that I wanted HCA employees to report issues to federal government agencies including CMS, knowing I'm not attorney, and knowing there is no ongoing litigation.

27. My rights and my daughter's rights have been impaired by Defendant Roberts Stevens PC, creating a chilling effect on my advocacy for my child, in a purposeful way. Two hours later, I responded to Attorney Jackson:

"I'm going to stop your sanctionable conduct, citing Rule 8.4 and the First Amendment. I can and will contact anyone I want, whenever I want, with whatever information I want, in whatever setting I want. If you want to walk down the path of telling me what I can and can't do, please keep doing do so in writing. My daughter and I are victims of your client's conduct."

28. I thought my reply was worded strongly enough that it would end the issue (although I forgot to mention Rule 4.3), but I was wrong. The cease-and-desist campaign had only just begun.

29. The litigation hold notice to the doctor dealt with a patient's rights issue from August 28/29 and my belief that various HCA employees have requirements to report the issues experienced by my child. Then on October 20, our rights to pursue our rights were challenged by the Defendants, resulting in harm, and all of this is happening while the

Defendants' client is under federal investigation for serious issues relating to patient rights. This creates a multifactorial patient rights issue for the Defendants and certainly some of their clients.

30. Attorney Jackson never replied to my email. This was my first and only communication received from him. I believe Attorney Jackson's email to me is improper, and I immediately reference how I think his communication is violative of the standards for the conduct of legal professionals (especially towards unrepresented parties) and the constitutional rights of me and my child.

31. Attorney Jackson tells me that he represents an entity named MH Mission Hospital, LLLP but does not mention if he is a representative of Dr. Deponti and does not provide any information about this entity called MH Mission Hospital, LLLP. That business entity might be involved in the hospital or might not, but my daughter's rights are too important to me to make any kind of assumptions about anything. Relating to the name of the business entity, an applicable analogy would be that I can go to the secretary of state website and form an LLC called Bill's Hamburgers LLC and then open a restaurant that exclusively sells hot dogs. So while Attorney Jackson felt comfortable defining what my rights would be going forward, he offered no legal basis for doing so, all without clarifying who he represents or how this entity called MH Mission Hospital, LLLP is even connected to me in any way.

32. The next day (October 21, 2025), I emailed Dr. Deponti and ask him if this Attorney Jackson is his representative:

"Last night I received a response to your Litigation Hold Notice from someone named Phil Jackson. Do you know him? He claims to be a legal professional representing an entity called MH Mission Hospital LLLP. His email and my response are below.

Are you in some way connected to an entity called MH Mission Hospital LLLP? He did not offer any background of this entity called MH Mission Hospital LLLP so I do not have any way of knowing what that entity is, or why he is responding to a Litigation Hold Notice to you. Approximately 24 hours ago, I asked him if he represented you and he has not responded. Did your insurance company hire him to be your representative?"

33. On October 22, 2025, I receive an email from Attorney Jordan Barnette, who also works at Roberts & Stevens. Attorney Jackson is copied on this email. The text of the email refers me to an attachment, a pdf labled "Madson - Notice of Representation_Cease and Desist(3763231.3).pdf." In the attachment, Attorney Barnette confirms that he represents Dr. Deponti, but goes on: "By way of this letter, we ask that you cease and desist direct communications with Mission/HCA representatives." The letter is written on Roberts Stevens' letterhead.

34. Attorney Barnette states:

"I can inform you that our firm has been engaged to represent the aforementioned persons and entities as it relates to the claims concerning your daughter and other items you have noted in prior correspondence. I can further advise that I am in receipt of the attachments you provided via email to me, today.

As for the other items of note in your emails, I do not plan on providing a response to those queries and I will reiterate my request that you cease and desist communicating with those represented individuals, directly."

35. During this exchange, Attorney Barnette mentions that he represents HCA Healthcare Inc. While I was unable to confirm any information about the business entity called MH Mission Hospital, LLLP, I was able to confirm that HCA Healthcare, Inc. is the largest

hospital system in the United States, the owner of our local hospital system, and has a net worth in excess of $100 billion.

36. So from this moment forward, I know there is a $100 billion dollar balance sheet behind all communication I received from the attorneys, including and especially the cease-and-desist communications. It's the very definition of a chilling effect on patient civil rights.

37. Attorney Barnette has confirmed to me that his firm represents Melina Arrowood. Ms. Arrowood is prominently mentioned in the litigation hold notice that I had sent to Dr. Deponti because of an 11-minute phone conversation that her and I had on August 28, the day before my daughter's discharge. In that conversation, she said was she was in nursing but I later googled her name and she was actually the Chief Operating Officer of Mission Hospital.

38. The next day, my daughter's discharge appointment occurred in the lobby of Sweeten Creek, in a public setting, lasted only 3 or 4 minutes, with multiple strangers present, and did not include a patient safety plan.

39. Because the discharge took place in the Sweeten Creek lobby, video surveillance footage likely exists and is inarguably an important piece of evidence as I continue to advocate for my child.

40. On September 4, in an effort to preserve this video footage, I had sent a litigation hold notice that was addressed to HCA Healthcare Inc and Ms. Arrowoood to an HCA employee named Michael McAlevey who is the Chief Legal and Administrative Officer of HCA Healthcare, Inc.

41. Mr. McAlevey is an attorney licensed in the state of Tennessee (BPR # 039831).

42. Attorney McAlvey never responded to my litigation hold and evidence preservation notice.

43. But now that I know Attorney Barnette represents both Ms. Arrowood and HCA Healthcare, Inc., so I reply to Attorney Barnette with this bullet pointed question/comment list about Ms. Arrowood and my attempt to preserve the video surveillance footage:

- "Can you confirm that she has received the attached Litigation Hold Notice?
- I delivered this to an HCA employee named Michael McAlevey on 9/3/25 but no one wrote me back. I've attached the correspondence.
- I tried to send this to her yesterday, and she refused delivery according to the Fedex driver who called me, so I don't what's going on but I'm sending it to you now since you represent her.
- In the communication, I requested further discharge guidance from Melina but no one wrote me back."

44. Attorney Barnette is telling me that he will not communicate about the delivery of a litigation hold notice to his client's Chief Legal Officer. His exact words, as mentioned above, are: "I do not plan on providing a response to those queries."

45. I'm trying to confirm that two of his clients received evidence preservations notices and he won't talk to me about it.

46. So this is the sequence I've experienced at this point:

    - I had Ms. Arrowood (Mission's Chief Operating Officer) on the phone with me pretending to be in nursing and not disclosing she was a C-suite executive.

    - I had Attorney McAlevey (HCA's Chief Legal and Administrative Officer) not reply to a litigation hold notice that came directly from me, an unrepresented father of a special needs minor.

- I had the attorneys and law firm that are representing these people and entities pounding me with cease and desist notices and then directly say they won't talk to me about evidence preservation.
- And then backdrop for every single bit of this is the hospital's Immediate Jeopardy designation from CMS which is zeroed in on patients rights.
- I'm trying to pursue my rights and preserve evidence while none of my counterparties will listen to me or give me a straight answer. That's the exact state of affairs on October 22.

47. At this point, I'm so concerned and confused at this point, especially with the backdrop of Immediate Jeopardy, I decided to educate myself about CMS processes. I learned that I could submit my own supplemental complaint to CMS, so I did that. In my supplemental complaint to CMS, I included the cease and desist communication.

48. Seeking additional clarity about my rights, on October 26, I send this email to the Defendants and again do not get a response:

"Phil and Jordan,

You've told me you represent these 5 individuals: Warren Deponti, Matthew Edwards, Melina Arrowood, Greg Lowe, and Jonathon Gluck.

My question is if I am allowed to use any of the methods below to have direct contact with them.

- Email
- Mail
- Process Server

Please let me know Yes or No on each of those three methods.

For at least the fifth time, I'm letting you know in writing that I am not an attorney. There is no active litigation between me and any of the Represented Individuals, so no court has yet

established rules for who can contact who. I believe it is within my rights to contact these individuals, but you have sent me a cease-and-desist letter among other attached forms of potential intimidation. I don't want a powerful law firm like Roberts Stevens to sue me, so I'm seeking clarity about what my rights are and what they aren't relating to these Represented Individuals. I'm currently nervous about trying to follow your rules while still maintaining my civil rights.

I will await your response.

Bill"

49. My research indicates that many commercial buildings that have public areas (such as office buildings and hospitals) preserve surveillance footage for 60 days and then it's often deleted. My daughter's discharge occurred on August 29, 2025. Sixty days from then is October 28. I am working against that potential deadline at all times the Defendants are trying to delay my advocacy.

50. In the middle of this civil rights disaster, the video footage evidence may be automatically deleted. All of this chilling cease and desist communication and obfuscation is occurring at the very moment that the video surveillance footage may be subject to automatic deletion. Every second that goes by increases the odds of spoilation.

51. On October 24, 2025, I was sorting through some paperwork on the desk in my home office and came across a survey from Mission Hospital that was handed to me at the conclusion of my daughter's discharge appointment. My recent experience with Mission was unsatisfactory and I wanted to fill the survey out in its entirety. But I paused, knowing I had received multiple cease-and-desist communications from Roberts Stevens – they have told me I can't contact anyone with the hospital but this survey is certainly going to the hospital. I asked for Attorney Jackson's permission to fill out the survey with this email:

"Phil,

In the lobby of the Sweeten Creek Mental Health Center at the conclusion of my daughter's 3-4 minute discharge appointment, the male nurse handed me an envelope. Inside the envelope (and attached to this email) was a letter from Greg Lowe, the CEO of Mission Hospital. In this letter, Greg mentioned to me "you can help make our care better for future patients and families." I am interested in doing that. The letter was placed in my hand and signed by Greg so he was communicating directly to me. The envelope contained a 2-page survey to highlight what Sweeten Creek is "doing right and what needs improvement." I have some actionable ideas for improvement, and I want to share them with Greg.

However, in your email below and Jonathon's emails yesterday (mentioning the words 'cease and desist' on back-to-back emails), you all have told me that you represent Greg Lowe and that I am no longer allowed to contact him directly. I had previously made you aware that I was not an attorney, but I'm doing so again – I am a private citizen and single father advocating for my child's rights. I am not an attorney.

While I am advocating for my daughter's rights and offering suggestions for systemic improvement vis a vis Greg's survey, I want to make sure to not get sued by a powerful law firm like yours - so I am asking you this question:

May I have your permission to fill this out and mail it to Greg?

I'm asking you to get back to me by 7pm tonight, because I'm running errands in the morning and I want to stop by the post office. Greg included a prepaid postage envelope, so I don't even need a stamp.

Bill"


52. Attorney Jackson did not respond so I emailed Attorney Barnette with this question:

"Jordan, I didn't hear from Phil. Will you allow me to process the survey that Greg asked for?"

53. Attorney Barnette replied:

**"You may return the survey via the post-paid envelope.**

As for whether I can permit you to communicate directly via email/mail with our represented personnel in this matter—I would refer you to the prior correspondence attached to you email asking that you cease and desist making continued communications.

Additionally, I have noted much urgency in your correspondence with certain requests demanding responses by a specific date certain or time of day (even if a request is sent the same day). For my part, I will endeavor to communicate with you promptly and professionally concerning this matter but I am generally unlikely to adhere to any immediate or protracted deadlines. I hope that you understand."

54. The bold emphasis on the entire first sentence was contained in Attorney Barnette's original email.

55. The bolding and the use of word "may" are both crucial. The cease-and-desist mechanism designed by the Defendants is fully operational right now. Attorney Barnette is 'allowing me' to fill out a Mission Hospital survey. At this moment, he is letting me know that for certain parts of my rights and my child rights, it is appropriate for me to go through him and seek permission – the process as designed in the cease and campaign is working for the Defendants. Collectively, the Defendants have effectively become the arbiter of what I can and cannot do during this process, and this email is the evidence of that.

56. Attorney Barnette has taken notice of how anxious I am to communicate about evidence preservation – the reason I am anxious is because this video footage might get automatically deleted. He's telling me to not expect him to respond quickly – more rules coming my way from the Defendants. I need that video saved.

57. On October 30, I emailed Attorney Jackson and Attorney Barnette with the text below,

with a subject line of "Cease and Desist Recap."

"Jordan,
I understand that I cannot impose any kind of deadline on the timing for a response from you – I get that. I also understand you have a job to do, and you are doing your best.

That said, your cease-and-desist letter (and repeated follow-up about it) is not lawful. I am not attorney, and I am not represented by an attorney, and you knew that well in advance of sending me a cease and desist. I am individual, and I have some claims against individuals that happen to be your clients now, those individuals are medical professionals that treated my child in what I what I think was an inappropriate manner, and no laws exist that I say I cannot contact those individual medical professionals. In fact, so many laws exist that say I can do exactly that.

Prior to your cease and desist, one individual client of yours received 3 emails from me and one fedex package from me. Your other individual clients received one email from me and one Fedex package from me (although one of your clients refused delivery of the Fedex package). The contents of all communication were legal and medical documents relating to the treatment of my child.

You've been careful not to 'demand' me to cease and desist but saying 'please cease and desist' is akin to a violent criminal saying 'kindly let me cut your arm off' – the 'please' and 'kindly' don't really matter.

As it relates to this cease-and-desist issue, your communication has been intimidating. It certainly has a direct and purposeful chilling effect on patient rights. I believe sending a cease and desist to an unrepresented non-attorney minor patient's dad violates CMS protocols, among a litany of others.

Bill"

58. A few days later, I received a letter from Carren D. Mackiewicz who is the Director of

Administrative Investigations with the North Carolina Medical Board. In the prior week,

the North Carolina Medical Board opened an investigation into two doctors that treated

my child. I had processed an online complaint form and received document requests

from NCMB on the same day I filled out the complaint form. Ms. Mackiewicz's letter mentions:

"You may wish to contact the hospital's "patient advocate" and share your concerns, if applicable. Additionally, you may also contact the North Carolina Department of Health Service Regulation at 1-800-662-7030 as they are the state agency that provides hospital and facility oversight. You may also pursue your concerns with the facility's practice manager and/or internal patient complaint process."

59. I would like to pursue these ideas to promote my rights and my child's rights, but again I pause, because of the pattern of communication I am receiving from Attorney Barnette and Attorney Jackson.

60. Attorney Barnette and Attorney Jackson do not respond.

61. On November 7, I again request permission from these attorneys to pursue my rights and my daughter's rights in the email below:

"Phil and Jonathon,

I need to revisit your cease-and-desist communication.

I'm attaching two letters I received relating to Warren and Matthew. The notices are from the Director of Administrative Investigations of the North Carolina Medical Board.

In the letter concerning Matthew, Ms. Mackiewicz relays to me the option to reach out to the hospital's patient advocate, practice manager, and internal patient complaint personnel. I am interested in doing that, but the problem for me is I have all this cease-and-desist communication from Roberts Stevens. It's worth noting that Ms. Mackiewicz had a copy of the cease-and-desist letter and follow-on emails before sending me this letter.

I'm clearly stating again:

- I am a private citizen and not an attorney. I made you aware of that in writing on 8/29/25 and multiple times thereafter. There has never been a question about whether or not I was an attorney.

- I am not represented by an attorney. I made you aware of this on 8/29/25 and multiple times thereafter. In fact, at this point, I have not even consulted an attorney on this matter.
- I have not filed any lawsuits. There is no ongoing litigation of any kind. Once litigation begins, a Court will almost certainly order me to communicate exclusively with Roberts Stevens on this matter if you are still representing the defendants at that time. When that happens, the request will be reasonable and lawful, and I will of course follow the Court's directions.
- My communications with HCA/Mission personnel preceding your cease-and-desist communications were all lawful and protected by my civil rights, my child's civil rights, and my child's patient rights. The substantive part of the communication was a 54-page detailed summary of my child's experience that I delivered to the individual doctors and individual executives involved with my child's care. There was nothing aggressive or threatening about any of my communication.
- Not an attorney, not in litigation, all communications are protected by CMS, other state and federal entities, and the Consititution.

I do not believe there is any legal basis for your cease-and-desist communication, so it is now time for you to either own or abandon the cease-and-desist communication:

- **Owning It.** If you want to own it and state it again, or point me to prior communications like you have before, I require a legal basis. Your response will necessarily have to conflict with the advocacy opportunities that Ms. Mackiewicz mentioned to me in her letter. In the absence of a clear legal basis for the cease-and-desist communication, your response would be indicative of an ongoing-multiple-law-violating attempt at restricting the rights of a special needs minor.

- **Abandoning It.** If you want to abandon it and effectively say 'don't worry about the all of the prior cease-and-desist communication,' your intimidation process will have started on 10/20/25 with Phil's original email and ended on day that I receive I response that we are done with the concept of a cease-and-desist. In this way, you will have essentially 'bookended' the timeframe that you were engaged in restricting the rights of a special needs minor.

I want to avoid any doubt in terms of the precise rights that I strongly believe you are trying to restrict my child from pursuing – the things that immediately come to mind as I'm typing this are ADA, 504, and CMS 42 CFR §482.13(a)(2) & (a)(7).

Jordan had previously let me know that Roberts Stevens' will not be adhering to any response timelines requests from me, so please respond at your leisure.

Bill"

62. It's been two weeks and Attorney Jackson or Attorney Barnette have not responded to my request for permission to continue advocating for my child, in addition to my request to better understand my own rights going forward.

63. I want to contact the Sweeten Creek facilities manager to obtain a copy of the video surveillance footage, but I've got all this communication that tells me I'm not allowed to.

64. Desperate to get more information, I try one more time to clarify whether HCA received my litigation hold and evidence preservation notice on September 4, the receipt of which would have required Attorney McAlevey to take steps to preserve the video surveillance footage on September 4.

65. The Defendants and I have one more email exchange, which again appears to take them some time and wordsmithing:

11/7/25 at 7:02pm – Bill Madson writes: "Can you confirm that your client HCA Healthcare received the attached litigation hold notice that I sent to Michael McAlevey on 9/4/25? The original email with metadata is attached for reference."

11/13/25 at 3:33pm – Attorney Barnette writes: "This was received. Thank you."

11/14/25 at 10:48am – Bill Madson writes " When you say "this was received" you are referring to HCA having received the litigation hold notice on 9/4/25 – is that correct? "This was received" could also mean you simply received my email and are acknowledging receipt of my email. Just looking to avoid any ambiguity."

11/19/25 at 6:27pm – Bill Madson writes "Following back up here. I'm not being obtuse. "This was received" has two distinct possible meanings. Either you are saying you just received my email, or you are saying that your client received the litigation hold email when I sent it – as it relates to evidence preservation in the matter concerning my child, those are two extraordinarily different messages. I'm asking for clarity again, five days after asking for it for the first time. It's appropriate for you to clarify this for me.

11/19/25 at 6:28pm – Attorney Barnette writes, "Thanks for following up, Bill. It was received by the client."

66. I first asked the Defendants about the September 4 evidence preservation request on October 22. I got a straight answer for the first time 28 days later. Twenty. Eight. Days. I'm wanting to talk about spoliation concerns and they're wanting to shut me up with the cease-and-desist campaign. Every second that ticked by over that 28 days increased the odds of the primary evidence being destroyed. An evidentiary crisis is underway because of the conduct of the Defendants.

67. As I sit here today, my child and I do not have full access to our civil rights as a result of the conduct of the Defendants. The Defendants have become our Judge and Jury for what we can and cannot do relating to their client's intentionally poor medical treatment of my child. This matter has escalated to a point where an actual Judge and Jury are needed to restore what is left of our rights because of the conduct of the Defendants.

## COUNTS

For each count, every prior paragraph in this document is realleged and incorporated by reference as if fully set forth in the Count.

### COUNT I
### First Amendment Retaliation
### 42 U.S.C. § 1983
### (Against All Defendants)

68. Defendants retaliated against me for engaging in core protected speech by launching a cease-and-desist email campaign to me while I was trying to preserve evidence for my disabled child's legal matter and pursue advocacy on her behalf.

## COUNT II
### Interference With The Right To Petition The Government
### 42 U.S.C. § 1983
### (Against All Defendants)

69. Defendants interfered with my right to discuss my daughter's treatment and

evidence preservation requests with anyone connected to HCA Healthcare Inc.

HCA Healthcare Inc. is a state actor. Furthermore, federal agency CMS mandates

that hospitals have internal complaint processes and the Defendants prohibited me

from participating in those processes.


## COUNT III
### Prior Restraint On Protected Speech
### 42 U.S.C. § 1983
### (Against All Defendants)

70. Defendants imposed an unconstitutional prior restraint by prohibiting me from

contacting people associated with my child's care.


## COUNT IV
### ADA RETALIATION
### 42 U.S.C. § 12203
### (Against All Defendants)

71. Defendants knew that my child was autistic. As long-term healthcare specialist

attorneys, they should have known about the Americans With Disabilities Act and

our rights associated therewith.


## COUNT V
### Section 504 Retaliation
### 29 U.S.C. § 794
### (Against All Defendants)

72. Defendants intentionally obstructed my efforts to secure disability-related protections for my child.

## COUNT VI
### Civil Conspiracy To Violate Federal Rights
### 42 U.S.C. § 1983
### (Against All Defendants)

73. Defendants worked together in a unified, cohesive way to obstruct my federal rights.

## Count VII
### Abuse of Process
### State Law
### (Against All Defendants)

74. The Defendants used their law licenses and legal threats to accomplish the improper purpose of suppressing our lawful and protected conduct.

## COUNT VIII
### Intentional Infliction Of Emotional Distress
### State Law
### (Against All Defendants)

75. Defendants' conduct was extreme, outrageous, and intended to cause us distress in a willful and wanton way, or with reckless disregard for doing the same.

## COUNT IX
### Negligent Infliction of Emotional Distress
### State Law
### (Against All Defendants)

76. Defendants should have known the distress their communications will have caused the recipient.

## COUNT X
### Civil Conspiracy
### State Law
### (Against All Defendants)

77. Defendants worked together in a unified, cohesive way with an unlawful

objective.

## COUNT XI
### Negligent Supervision
### State Law
### (Against only Defendant Roberts & Stevens, PA)

78. Defendant Roberts & Stevens, PA failed to properly supervise its employees and

prevent the misconduct directed towards me and my child.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Bill Madson and F.M. request that this Court enter

judgment in our favor and against all Defendants, jointly and severally, and further:

(a) Award us compensatory damages to be determined by a jury on each of the above-

stated counts; and

(b) Award us punitive and exemplary damages, in an amount to be

determined by a jury, on each of the above-stated counts; and

(c) Tax the prejudgment interest of the damages, attorneys' fees and costs of

this action to the Defendants, as of the date of the filing of this Complaint; and

(d) Award us such other and further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

I respectfully demand a trial by jury with respect to each claim in this Complaint.

This the 25th day of November, 2025.

Respectfully submitted,


_____

Bill Madson

Address:    33 Pheasant Drive
            Asheville, NC 28803
Mobile:     404-226-2040
Email:      bill@cliftontrust.com