IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Case No. 1:25-cv-425

BILL MADSON, individually and as next friend of F.M., a minor,

    Plaintiffs,

v.

ROBERTS & STEVENS, P.A., PHIL JACKSON, ESQ., AND JORDAN BARNETTE, ESQ.,

    Defendants.

**DEFENDANTS'
BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND**

## INTRODUCTION

Plaintiff filed this action against Defendants—attorneys, not medical professionals—claiming Defendants interfered with his civil rights and his ability to seek redress for the improper medical treatment his daughter received while in the care of Defendants' client. Plaintiff's claims are subject to a pending motion to dismiss.

By a motion to amend, Plaintiff contends he has discovered new facts implicating Defendants. Yet he alleges not a single new fact. The basis of his complaints against Defendants is the cease-and-desist correspondence they sent, all of which is outlined in the original complaint. There is no new communication alleged in the proposed amended complaint.

Instead, there is rampant speculation accusing Defendant lawyers and law firm of breaking laws, "illegal behavior," and obstruction of "a federal investigation." All without a single shred of factual basis.

The reality is this. At some point after his daughter's discharge, Plaintiff left a voice-mail message at the hospital. His message included the following statements:

- "Everyone who is listening, my goal is to ruin your Labor Day weekend. I want it to be uncomfortable for you. This is my express desire. If you're listening to me, I already won."

- "I know you all looked me up. I develop apartments here in Asheville. A lot of people know that. I do something else that's much more complicated for all of you. About 13 years, I've been a collections and litigation advisor to a hedge fund in Atlanta. If you don't believe me, search up 'Vanity Fair article – Louise.' That's an 80-million-dollar house that I took from that woman. She had dinner in that fucking house the night before I took it. I took the furniture, too. Nothing is permanent when I am involved. Nothing!"

- "I've never pursued a forced sale of a hospital system but guess what— Sometimes I do something for the very first time and I do it better than it's ever been done in the history of the fucking world!"

Durham Aff. ¶ 3, attached hereto as Exhibit A. On August 30, 2025, Plaintiff sent an email to Defendant Barnette:

- "Jonathon, I fully acknowledge this could be paranoia on my part and then this email means nothing, but I know how things go. I was just playing in the driveway with my children and two cars came into my culdesac, driving slow with no particular place they were going. I swear to God if you or anyone involved in this has a private investigation team surveilling my children at my home, this is not going to be a Citizen Times kind of problem. It's going to be a CNN kind of problem."

2

Exhibit B, attached hereto.[1] Between these communications and Defendants' first communication to Plaintiff, Plaintiff sent correspondence to at least eight hospital representatives. Doc. 12-1 ¶¶ 28, 34, 36, 37, and 38. He represented that he was prepared to sue. Doc. 12-3 p. 7. He accused them of criminal conduct. Doc. 12-3 p. 9.

Defendants, meanwhile, are being sued for merely asking that Plaintiff communicate directly through them instead of continuing to contact multiple client representatives. They never threatened Plaintiff with any ramifications if he chose not to. Indeed, on October 30, 2025, after all of Defendants' allegedly wrongful communications to Plaintiff, Plaintiff had concluded that "no laws exist that say I cannot contact those individual medical professionals. In fact, so many laws exist that say I can do exactly that." Doc. 12-4 p. 34.

Plaintiff's motion to amend should be denied, and, pursuant to Defendants' motion to dismiss, this case must come to an end.

## **STANDARD**

While Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend a complaint should be freely given when justice so requires—*see* Fed. R. Civ. P. 15(a)(2)—Plaintiff does not have blank slate to amend. A proposed amendment

---

[1] Plaintiff did not include this email in his "Roberts & Stevens Communication File" attached to his proposed Amended Complaint.

may be denied if it "would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). A proposed amendment may be denied on futility grounds if it is " 'clearly insufficient or frivolous on its face' " or "if the complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Secs. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) and citing *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)). In considering whether a proposed amendment is futile, evidence outside the proposed complaint may be considered. *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate (No. 782)*, 132 F.R.D. 139, 142 (S.D.N.Y. 1990) (denying amendment when party opposing amendment provided affidavits showing that moving party's position was "conclusory and unsupported"). Ultimately, where it appears that "granting leave to amend is unlikely to be productive, it is not an abuse of discretion to deny leave to amend." *Northbrook Nat. Ins. Co. v. J & R Vending Corp.*, 167 F.R.D. 643, 647 (E.D.N.Y. 1996).

## ARGUMENT

### I. Plaintiff already initiated litigation against the medical providers.

By his motion to amend, Plaintiff seeks to join HCA Healthcare, Inc., MH Mission Hospital, LLLP, and Melina Arrowood as additional defendants, asserting against them a litany of claims arising from their alleged interference with Plaintiff's

advocacy rights and alleged retaliation against him for the exercise of such rights. But, since the filing of this case against Defendants, Plaintiff has filed litigation against these prospective defendants for the very same claims and actions. *See Madson v. HCA Healthcare, Inc. et al.*, No. 1:25-cv-455-MOC-WCM, Doc. 1 ¶ 114 ("Defendants acted jointly and in concert to interfere with Plaintiffs' federally protected rights, including rights secured under federal disability law and the right to engage in patient advocacy without reprisal."). It is hardly an abuse of discretion to deny Plaintiff two lawsuits against the same defendants for the same actions.

Plaintiff does seek to add Greg Lowe and "Michael McAlvey"[2] to this action. They are not named in the new lawsuit, but the proposed Amended Complaint contains no justification for their joinder. Lowe is merely alleged to have: (1) received a notice from the Centers for Medicare and Medicaid; (2) signed for Plaintiff's litigation hold email; and (3) authored a customer survey letter. Doc. 12-1 ¶¶ 30, 57, and 60. That's it.

Abundantly little is also alleged against Michael McAlevey, HCA's in-house counsel. He received litigation hold correspondence. Doc. 12-1 ¶¶ 28 and 69. According to Plaintiff, McAlevey did not reply. Doc. 12-1 ¶ 73. That's all. Nothing more is alleged against him.

---

[2] Plaintiff incorrectly identifies him in the caption and various paragraphs as "McAlvey." His correct last name is McAlevey.

These allegations hardly support any valid claim, certainly not any that suggest illegal behavior and interference with federal investigations. The addition of these additional defendants is futile and must be prohibited.

## II.   Plaintiff's proposed Amended Complaint contains the same flawed federal claims.

Plaintiff's proposed Amended Complaint contains the same claims against Defendants under 42 U.S.C. § 1983, 42 U.S.C. § 12203, and 29 U.S.C. § 794 as his original Complaint. There is nothing new in these claims or the alleged facts supposedly supporting them. Plaintiff does not allege any new correspondence from Defendants. Even the existence of the hospital's Immediate Jeopardy notice and Defendants' supposed knowledge of it is the same. *See* Doc. 1 ¶¶ 5, 7, 8, 26, 46, and 47.

In their motion to dismiss, Defendants set forth why these claims fail. The reasons are numerous. Defendants are not state actors under Section 1983, and no liability can attach arising from their actions while representing their client.[3] Plaintiff's claim under Section 794 (504 Retaliation) fails because he made no allegation that Defendants have received any federal financial assistance. The lack

---

[3] Plaintiff alleges Defendants have committed crimes. But how? Sending correspondence asking that he communicate directly with them instead of their client? Correspondence to which Plaintiff responded, "I can and will contact anyone I want, whenever I want, with whatever information I want, in whatever setting I want"? Doc. 12-4 pp. 11-12. In determining whether a lawsuit can proceed, a court must not dispense with its own experience and common sense. *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009).

of such an allegation is fatal. *Wright v. Carroll Cnty. Bd. of Educ.*, No. 11-CV-3103, 2013 WL 4525309, at *20 (D. Md. Aug. 26, 2013). And Plaintiff's ADA retaliation claim fails, among other reasons, because Defendants are not subject to the ADA in these circumstances. They are not an employer under Subchapter I, they are not a public entity under Subchapter II, and Plaintiff never tried to avail himself of Defendants' services under Subchapter III. *See*, *e.g.*, *Harmon v. Waterman*, No. 24-5773, 2025 WL 2434374, at *2 (6th Cir. June 6, 2025).

Plaintiff's claims are just as futile as they are in the original Complaint. The proposed amendment cures nothing.

### III. Plaintiff's same state law claims are still futile.

Similarly, Plaintiff's repeated state law claims fail, too. The abuse of process claim is still deficient because there is no allegation that Defendants misused the legal process *after* such legal process was issued. *See Chidnese v. Chidnese*, 210 N.C. App. 299, 310-11 (2011). Thus, even if the cease-and-desist communications had an "evil purpose," that is still not enough to allege an abuse of process claim because there was no wrongful action *after* the communications were issued. *Ponder v. Been*, 919 S.E.2d 527, 534 (N.C. Ct. App. 2025).

Then there are the emotional distress claims. They both fail because Plaintiff has not pleaded that he is suffering from *severe* emotional distress, which is "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic

7
Case 1:25-cv-00425-MOC-WCM    Document 21    Filed 01/05/26    Page 7 of 16

depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Piro v. McKeever*, 245 N.C. App. 412, 416, *aff'd,* 369 N.C. 291 (2016) (citation omitted). Without such a showing, there is no valid claim. *Redman v. Am. Airlines, Inc.*, No. 3:22-CV-00515-RJC-DCK, 2023 WL 4768696, at *4 (W.D.N.C. July 26, 2023) (dismissing the emotional distress claim because it was "devoid of factual allegations regarding the type, manner, or degree of severe emotional distress" experienced) (citing *Cauley v. Bean*, 282 N.C. App. 443, 451 (2022)). Nowhere in the proposed Amended Complaint has Plaintiff alleged the type, manner, and degree of *severe* emotional distress—it is only conclusory "distress" (Doc. 12-1 ¶¶ 115-16) and being "anxious" (Doc. 12-1 ¶ 85), which is not sufficient. *Redman*, 2023 WL 4768696 at *4.

The emotional distress claims fail for other reasons, too. There is no intentional infliction of emotional distress claim because Plaintiff did not plead that Defendants acted in a manner that was extreme and outrageous or that "exceeds all bounds usually tolerated by a decent society." *Piro*, 245 N.C. App. at 417 (citation omitted). As a matter of law—and this is a question of law (*Redman*, 2023 WL 4768696, at *5)—the cease-and-desist requests are not extreme and outrageous, and the claim should be dismissed.

The negligent infliction of emotional distress claim fails for the fundamental reason that Plaintiff has alleged only intentional actions, not accidental or negligent actions. *See* Doc 12-1, *generally*, and ¶ 3 ("Defendants coordinated a series of coercive, misleading, and retaliatory cease-and-desist directions …, which *intentionally* chilled their federally protected civil-rights activities" (emphasis added). This is a fatal flaw, and the claims are "subject to dismissal when the material factual allegations charge nothing but *intentional* acts." *Hetzel v. ANC Healthcare, Inc.*, No. 1:23-CV-00152-MR-WCM, 2024 WL 5483576, at *10 (W.D.N.C. Aug. 7, 2024), *report and recommendation adopted,* No. 1:23-CV-00152-MR-WCM, 2025 WL 895839 (W.D.N.C. Mar. 24, 2025) (quotation omitted and emphasis added). Moreover, none of the Rules of Professional Conduct or provisions of the Constitution can be used by Plaintiff in a claim against Defendants.

Finally, Plaintiff's claim for negligent supervision fails. Plaintiff did not make any allegation that Roberts & Stevens's lawyers were negligent or unqualified based upon previous acts. *See Doe v. Diocese of Raleigh*, 242 N.C. App. 42, 50 (2015) (citation omitted). He also did not adequately plead that Roberts & Stevens knew or should have known of any alleged incompetency *prior* to the bad act (sending the cease-and-desist communications). *Smith v. Privette*, 128 N.C. App. 490, 494 (1998).

## IV. The state conspiracy claim (Count X) fails.

The civil conspiracy claim in the proposed Amended Complaint appears to allege both the same intra-corporate conspiracy between Roberts & Stevens and its lawyers from the initial Complaint as well as a new conspiracy between Defendants and their clients, the proposed new defendants. Doc 12-1 ¶ 117. First, if Plaintiff's other claims fail, then so, too, does the conspiracy claim because a conspiracy is a damages theory, not a standalone claim. *Fox v. Fox*, 283 N.C. App. 336, 346-47 (2022).

To the extent Plaintiff is still alleging a conspiracy within Roberts & Stevens, that fails due to the intra-corporate immunity doctrine. *See Seguro-Suarez by & through Connette v. Key Risk Ins. Co.*, 261 N.C. App. 200, 218 (2018). Plaintiff's new conspiracy claim between Defendants and their clients fails, too, because there cannot be a conspiracy between lawyers and their clients based upon the attorney-client relationship. *Rowl v. Smith Debnam Narron Wyche Saintsing & Myers, LLP*, No. 3:07-CV-491-RJC, 2009 WL 187575, at *3 (W.D.N.C. Jan. 23, 2009), *aff'd*, 376 F. App'x 329 (4th Cir. 2010) ("The attorney-client relationship is immune from conspiracy claims unless the conduct occurs outside the scope of the attorney's representation of a client."). Here, Plaintiff has only alleged that Defendants acted on the proposed new defendants' behalf to further their goals, which are allegedly

the same. Doc 12-1, *e.g.*, ¶ 75. This is conduct within the scope of the attorney-client relationship and is not actionable.

V. **No cause of action exists for "Tortious Interference with Legal Rights."**

In his proposed new Count XI, Plaintiff seeks to assert a state law claim for "tortious interference with legal rights." Doc. 12-1 p. 35. Plaintiff alleges "Defendants intentionally interfered with prospective legal rights include [sic] the right to advocate, report incidents, preserve evidence and pursue legal remedies relating to FM's care at an HCA facility." Doc. 12-1 ¶ 118. There is no recognized claim in North Carolina—or anywhere that counsel can find—for tortious interference with legal rights. No amendment to assert such a claim should be permitted.

Even if one could create such a claim, it might have similar requirements to a claim for tortious interference with contract or prospective economic advantage, including that a defendant act "without justification." *See*, *e.g.*, *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 674 (2001). A claim for tortious interference with contract "must admit of no motive for interference other than malice." *Id*. If the alleged interference admits of motive related to a legitimate business interest, a claim cannot proceed. *Id*.

*Filmar Racing* is particularly instructive. Filmar Racing, the plaintiff, had a contract to sell assets to a third party for $1,350,000 but was already involved in a

lawsuit with its minority shareholder over how the proceeds would be distributed. *Id*. at 669-70. Lawyers representing the minority shareholder sent a letter to the third party threatening to hold it accountable if the sale occurred and funds were conveyed from the third party to Filmar Racing. *Id*. at 670. The third party subsequently refused to proceed with the transaction. *Id*.

The North Carolina Court of Appeals affirmed the dismissal of Filmar Racing's tortious interference claim against the lawyers. Because the complaint made express reference to the litigation that existed between Filmar Racing and the minority shareholder (during which the defendants sent the letter,) the complaint "on its face" alleged "that defendants have a legitimate business interest" and "admits of motive for interference other than malice." *Id*. at 675.

The same result would be reached here if this claim existed under North Carolina law. Plaintiff fails the malice test. Plaintiff made clear to the hospital and its representatives that he was pursuing litigation. Doc. 12-3 pp. 16, 22. He urged Warren Deponti to "Hire an attorney to represent you individually." Doc. 12-3 p. 16. Defendants merely requested that Plaintiff communicate with them instead. And they assured him they would pass along his communications to the appropriate person. Doc. 12-4 p. 45. In *Filmar Racing*, defendant lawyers expressly threatened to sue a third party if the third party carried out a contract, and there was no malice as a matter of law. Here, Plaintiff threatened to sue the medical providers (and even

to take the hospital from them), and Defendants did far, far less than the attorneys in *Filmar Racing*.

No amendment to include this claim should be permitted.

## VI. **Plaintiff's new Chapter 75 claim is futile.**

In his proposed Amended Complaint, Plaintiff seeks to add a claim under North Carolina's Unfair and Deceptive Trade Practices Act. The UDTPA, however, expressly does not include "professional services rendered by a member of a learned profession." N.C.G.S. § 75-1.1(b). North Carolina courts apply a two-step test to determine whether the learned profession exemption applies. *Sykes v. Health Network Solutions, Inc.*, 372 N.C. 326, 334 (2019). Courts first ask whether the "person or entity" who is alleged to have violated the UDTPA is "a member of a learned profession." *Id*. Next, courts ask whether the conduct in question involves "a rendering of professional services." *Id*.

Defendants are attorneys, unquestionably members of a learned profession. *Reid v. Ayers*, 138 N.C. App. 261, 266 (2000). And there is no question their correspondence was created during the course of, and in furtherance of, the rendering of professional services to their clients. *See* Doc. 12-4 p. 9 ("Please allow this email to confirm that I have been retained to represent MH Mission Hospital."); p. 19 ("I can inform you that our firm has been engaged to represent the aforementioned persons and entities as it relates to the claims concerning your daughter and other

items you have noted in prior correspondence."); p. 31 ("As for whether I can permit you to communicate directly via email/mail with our represented personnel in this matter—I would refer you to the prior correspondence attached to you [sic] email asking that you cease and desist making continued communications."); p. 45 ("If you have any concerns that you would like to relay to the Hospital regarding anything at Mission or Sweeten Creek, then I would ask that you address them in writing and route to myself or Phillip Jackson. We will forward them to the appropriate personnel.").

No Chapter 75 claim can be permitted in this action.

## CONCLUSION

Based upon the foregoing, Plaintiff's Motion to Amend should be denied. The purported claims are futile and unnecessary and, in some instances, already duplicative of existing litigation.

This the 5th day of January, 2026.

*/s/ Joshua B. Durham*
Joshua B. Durham (N.C. Bar No. 25414)
Edward B. Davis (N.C. Bar No. 27546)
Kevin J. Roak (N.C. Bar No. 57402)
BELL, DAVIS & PITT, P.A.
227 West Trade Street, Suite 1800
Charlotte, NC 28202
(704) 227-0400
jdurham@belldavispitt.com
ward.davis@belldavispitt.com
kroak@belldavispitt.com
*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

                                                              */s/ Joshua B. Durham*
                                                              Joshua B. Durham

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing brief was electronically filed with the Clerk of Court using the CM/ECF system, which will serve the same on counsel or parties of record.

This the 5th day of January, 2026.

*/s/ Joshua B. Durham*
Joshua B. Durham
